**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

|  |  |  |
|---|---|---|
| IN RE: | : | **CASE NO. 14-52221** |
|  | : |  |
|  | : | **CHAPTER 11** |
| **GARY D. ROLAND AND** | : |  |
| **RENÉE A. ROLAND,** | : | **JUDGE TRACEY N. WISE** |
| Debtors. | : |  |

## ORDER CONFIRMING CHAPTER 11 PLAN OF REORGANIZATION

The plan under chapter 11 of the Bankruptcy Code entitled Gary D. Roland and Renee A. Roland's Second Amended Chapter 11 Plan of Reorganization (the "Plan") [Doc. No. 622] filed on September 11, 2016, having been transmitted to Creditors and Equity security holders as defined in the Plan; the Debtors having filed a Supplement to Report of Ballots [D.E. 670] that all Classes have accepted the Plan; and hearing on confirmation of the Plan having been held on November 22, 2017;

It having been determined after hearing on notice that the requirements for confirmation of the Plan set forth in 11 U.S.C. Section § 1129(a) have been satisfied;

IT IS ORDERED that any Objections to confirmation of the Plan that have not been withdraw are overruled; and it is further

ORDERED that the Plan, as modified by Agreed Order Regarding Treatment of Claims of JP Morgan Chase Bank, NA Under Debtors' Chapter 11 Plan of Reorganization [D.E. 637] and Agreed Order Regarding Treatment of Claim of MTGLQ Investors, LP Under Debtors' Chapter 111 Plan of Reorganization [D.E. 656], is confirmed; a copy of the confirmed Plan is attached.

Tendered by:

FOWLER BELL PLLC

*/s/ Taft A. McKinstry*
Taft A. McKinstry, Esq.
Kentucky Bar ID: 46610
300 West Vine Street, Suite 600
Lexington, KY 40507-1660
Telephone: (859) 252-6700
Facsimile: (859) 255-3735
Email: TMcKinstry@FowlerLaw.com

**COUNSEL FOR GARY D. ROLAND AND
RENEE A. ROLAND**

All parties in the CM/ECF system to receive notification in this case,
and to all those Creditors and Parties in interest to receive notice in this case.

4842-2743-9190, v. 1

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Monday, November 27, 2017**
**(tnw)**

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 14-52221 |
| GARY D. ROLAND AND | ) | |
| RENÉE A. ROLAND, | | |
| | ) | CHAPTER 11 |
| DEBTORS | ) | |

GARY D. ROLAND AND RENÉE A. ROLAND'S
SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Taft A. McKinstry, Esq.
FOWLER BELL PLLC
Kentucky Bar ID: 46610
300 West Vine Street, Suite 600
Lexington, KY  40507-1660
Telephone: 859-252-6700
Facsimile:  859-255-3735
E-mail:  TMcKinstry@FowlerLaw.com

**ATTORNEYS FOR DEBTORS,**
**GARY D. ROLAND AND**
**RENÉE A. ROLAND**

DATED:  August 2, 2016
Updated:  July 7, 2017
And September 7, 2017

1

INDEX

**ARTICLE 1** ...................................................................................................................5

    1.1. **"Administrative Claim" or "Administrative Expense"** .............................5
    1.2. **"Allowed Claim"** .............................................................................................5
    1.3. **"Allowed Secured Claim"** ..............................................................................5
    1.4. **"Allowed Unsecured Claim"** ..........................................................................6
    1.5. **"Assets"** ............................................................................................................6
    1.6. **"Ballot Date"**. ...................................................................................................6
    1.7. **"Bankruptcy Code"** .........................................................................................6
    1.8. **"Bankruptcy Court"** ........................................................................................6
    1.9. **"Bankruptcy Rules"** ........................................................................................7
    1.10. **"Business Day"** ................................................................................................7
    1.11. **"Causes of Action"** ..........................................................................................7
    1.12. **"Chapter 11 Case"** ...........................................................................................7
    1.13. **"Chase Bank"** ..................................................................................................7
    1.14. **"Claim"** ............................................................................................................7
    1.15. **"Claimant" or "Creditor"** ..............................................................................7
    1.16. **"Class"** .............................................................................................................7
    1.17. **"Committee"** ....................................................................................................7
    1.18. **"Confirmation"** ...............................................................................................7
    1.19. **"Confirmation Date"** ......................................................................................7
    1.20. **"Confirmation Order"** ....................................................................................7
    1.21. **"Debtors"** .........................................................................................................7
    1.22. **"Debtors in Possession"** ..................................................................................8
    1.23. **"Discharge Order"** ..........................................................................................8
    1.24. **"Disputed Claim"** ............................................................................................8
    1.25. **"Effective Date"** ..............................................................................................8
    1.26. **"Final Order"** ..................................................................................................8
    1.27. **"IRS"** ...............................................................................................................8
    1.28. **"Loan Documents"** .........................................................................................8
    1.29. **"Operating Claim"** ..........................................................................................8
    1.30. **"Net Cash Flow"** .............................................................................................8
    1.31. **"Net Income"** ..................................................................................................8
    1.32. **"Petition Date"** ................................................................................................8
    1.33. **"Plan"** ...............................................................................................................9
    1.34. **"Post-Confirmation Expenses"** ......................................................................9
    1.35. **"Priority Tax Claim"** .......................................................................................9
    1.36. **"Pro Rata"** ......................................................................................................9
    1.37. **"Schedules"** .....................................................................................................9
    1.38. **"U.S. Bank"** ....................................................................................................9

**ARTICLE 2** ...................................................................................................................9

    2.1. **Class One: Allowed Secured Claims of Chase Bank** ....................................9
    2.2. **Class Two: Allowed Secured Claims of Igloo Series III Trust** ....................9

2.3.    Class Three:  Allowed Secured Claim of Kentucky Tax Lien Fund, LLC ............10
2.4.    Class Four:  Allowed Secured Claim of Lexington Fayette Urban County
        Government .........................................................................................................10
2.5.    Class Five:  Allowed Secured Claim of MRGLO Investors, LP............................10
2.6.    Class Six:  Allowed Secured Claims of U.S. Bank. ..............................................10
2.7.    Class Seven:  Allowed Secured Claim of Deutsche Bank as to 1669 Konner Woods
        Drive ....................................................................................................................10
2.8.    Class Eight: Allowed Secured Claim of Deutsche Bank as to 159 Chenault Road10
2.9.    Class Nine:  Allowed Unsecured Claims ...............................................................10
2.10.   Class Ten:  Interests of the Debtors in Property of the Estate ...............................10

ARTICLE 3 .....................................................................................................................11

3.1.    Class One (Chase Bank Claims) .............................................................................11
3.2.    Class Two (Igloo Series III Trust) ..........................................................................11
3.3.    Class Three (Kentucky Tax Lien Fund, LLC) ........................................................11
3.4.    Class Four (Lexington Fayette Urban County Government)....................................11
3.5.    Class Five (MRGLO Investors, LP) .......................................................................12
3.6.    Class Six (U.S. Bank Claims) .................................................................................12
3.7.    Class Seven (Deutsche Bank Claim as to 1669 Konner Woods Drive) ..................12
3.8.    Class Eight (Deutsche Bank Claim as to 159 Chenault Road) ...............................13
3.9.    Class Nine (Allowed Unsecured Claims) ...............................................................13
3.10.   Class Ten (Interests of the Debtors in Property of the Estate).................................13

ARTICLE 4 .....................................................................................................................13

4.1.    Impaired Classes ....................................................................................................13
4.2.    Unimpaired Classes ................................................................................................13
4.3.    Class Vote ..............................................................................................................13

ARTICLE 5 .....................................................................................................................13

5.1.    Administrative Claims ............................................................................................13
5.2     Operating Claims....................................................................................................14
5.3     Priority Tax Claims ................................................................................................14

ARTICLE 6 .....................................................................................................................14

6.1.    Executory Contracts ...............................................................................................14
6.2.    Unexpired Leases ...................................................................................................14

ARTICLE 7 .....................................................................................................................14

7.1.    Lien Avoidance.......................................................................................................14
7.2.    Estate; Release of Liens..........................................................................................16
7.3.    Continued Operations of the Debtors ......................................................................16
7.4.    Sale of Real Estate Assets.......................................................................................16
7.5.    Duties of Debtors....................................................................................................17

7.6.    Notice Procedure ................................................................17
7.7.    Request for Post-Confirmation Notices ................................18
7.8.    Objection to Notice ............................................................18
7.9.    Approval of Noticed Matter ................................................18
7.10.   Execution of Documents and Taking of Actions by Debtors ........18
7.11.   Prosecution of Claims and Causes of Actions .......................18
7.12.   Exemption from Transfer Taxes ..........................................19
7.13.   Authority for Transactions ................................................19
7.14.   Confirmation Order as Evidence ........................................19
7.15.   Setoff ..............................................................................19
7.16.   Objections to Claims ..........................................................19
7.17.   Distributions with Respect to Disputed Claims .....................19
7.18.   Unclaimed Distributions ....................................................20
7.19.   De Minimus Payments ........................................................20
7.20.   Consummation; Closing of Case ..........................................20

ARTICLE 8 ...............................................................................20

8.1.    Time Periods ....................................................................20
8.2.    Governing Law ..................................................................20
8.3.    Severability ......................................................................20

ARTICLE 9 ...............................................................................21

9.1.    Effect ..............................................................................21
9.2.    Revocation ........................................................................21
9.3.    Modification Prior to Confirmation ....................................21
9.4.    Modification After Confirmation ........................................21
9.5.    Acceptance or Rejection of Modification ..............................21
9.6.    Deletion of Classes ............................................................21
9.7.    Confirmation Under §1129(b) of the Bankruptcy Code ............21

ARTICLE 10 .............................................................................22

10.1.   Discharge ..........................................................................22
10.2.   Injunction ........................................................................22
10.3.   General Release by Holders of Claims ..................................22
10.4.   Injunction Related to Released Claims ..................................22
10.5.   Notice of Default ................................................................22
10.6.   IRS Default Provisions ......................................................23
10.7.   Set-Off and Recoupment Rights ..........................................23
10.8.   No Admissions or Waivers ..................................................23

ARTICLE 11 .............................................................................23

11.1.   Purposes ..........................................................................23
11.2.   Exclusive Jurisdiction ........................................................25
11.3.   Abstention ........................................................................25

## GARY D. ROLAND AND RENÉE A. ROLAND'S
## SECOND AMENDED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF
## THE UNITED STATES BANKRUPTCY CODE

Gary D. Roland and Renée A. Roland, Debtors and Debtors-in-Possession, propose the following Second Amended Plan of Reorganization, pursuant to §1121 of the Bankruptcy Code, 11 U.S.C. §1121.

## ARTICLE 1

## DEFINITIONS

For the purposes of the Plan, the following terms when used in initially capitalized form shall have the respective meanings set forth herein and, unless the context otherwise requires, such meanings shall be applicable to the singular and the plural forms of the terms defined. Unless otherwise defined herein, a term used in the Plan shall have the meaning ascribed to it in the Bankruptcy Code and the Bankruptcy Rules.

**1.1.** **"Administrative Claim" or "Administrative Expense"** shall mean an Allowed Unsecured Claim under §503(b)(1) of the Bankruptcy Code which is entitled to priority under §507(a)(1) of the Bankruptcy Code, including all allowances of compensation and reimbursement of expenses of professional persons approved by the Bankruptcy Court, and fees and charges against the bankruptcy estate under Section 1930 of title 28, United States Code.

**1.2.** **"Allowed Claim"** shall mean a Claim allowable under §502 of the Bankruptcy Code that (i) is allowed by Final Order, or (ii) is scheduled as liquidated in amount, and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduled amount of such Claim, or (iii) proof of which is timely filed with the Bankruptcy Court on or before the date designated by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules as the last date for filing proofs of claim, and, as to (ii) or (iii), to which no objection to the allowance thereof has been or is made within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or Order of the Bankruptcy Court, or to which objection has been timely filed and such Claim is allowed in such amount provided by Final Order.

**1.3.** **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, mortgage or other encumbrance against or interest in, or which is subject to the right of setoff under §553 of the Bankruptcy Code against, property in which the Debtor has an interest, to the extent of the value, as determined in accordance with §506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in, or to the extent of the amount of such setoff against, the Debtors' interest in such property, and which lien, security interest, mortgage or other encumbrance or interest is valid, perfected, and enforceable, and not void or voidable under the Bankruptcy Code or applicable non-bankruptcy law.

5

**1.4.** **"Allowed Unsecured Claim"** shall mean an Allowed Claim, or portion thereof, which is not an Allowed Secured Claim.

**1.5.** **"Assets"** shall mean all right, title and interest of the Debtor in and to all of its assets, except the assets abandoned and executory contracts and unexpired leases rejected under the Plan, including:

      (1)    all property under § 541 of the Bankruptcy Code;

      (2)    all real and personal property of whatever nature, whether tangible or intangible;

      (3)    all leases, permits, licenses, contract rights and all rights thereunder;

      (4)    all equipment, fixtures and supplies, including vehicles and office equipment, and all parts inventory;

      (5)    all cash, cash equivalents, cash deposits, certificates of deposit, security deposits, and prepaid expenses, including all interest earned or accrued thereon;

      (6)    all interests in insurance policies;

      (7)    all accounts receivable and rights to receive payments;

      (8)    all books of account, ledgers, files and other records pertaining to the Assets, operations of and claims of creditors of the Debtor;

      (9)    all rights, claims, Causes of Action, rights of setoff and rights to equitable relief, including all rights, claims and causes of action of the Debtor arising under the Bankruptcy Code or arising under applicable non-bankruptcy law before or after the Petition Date; and

      (10)    all tax attributes, including asset basis, unused net operating losses, tax credits and refunds.

**1.6.** **"Ballot Date"** shall mean the date set by the Bankruptcy Court as the last date for timely receipt of a ballot accepting or rejecting the Plan.

**1.7.** **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §101, et. seq., as amended by the Bankruptcy Reform Act, Pub. L. No. 95-598, 95th Cong., 2d Sess. (1978), and all amendments thereof, and titles 18 and 28 of the United States Code, as amended, as applicable to proceedings under title 11 of the United States Code.

**1.8.** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division, in which the Chapter 11 Case is pending, or such other court as shall have original jurisdiction with respect to the Chapter 11 Case.

**1.9.** **"Bankruptcy Rules"** shall mean the rules governing practice and procedure in cases under title 11, United States Code, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

**1.10.** **"Business Day"** shall mean a day which is not a Saturday, a Sunday or a legal holiday as defined in Bankruptcy Rule 9006(a).

**1.11.** **"Causes of Action"** shall mean all avoidance and preference actions under applicable sections of the Bankruptcy Code and all other causes of action, including declaratory, tort and damage actions the Debtor may have against third parties under applicable bankruptcy or nonbankruptcy law.

**1.12.** **"Chapter 11 Case"** shall mean the case commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court, as to the Rolands, Case No. 14-52221.

**1.13.** **"Chase Bank"** shall mean J.P. Morgan Chase Bank, N.A.

**1.14.** **"Claim"** shall mean (i) right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured, where such right arose or accrued prior to the Confirmation Date; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, where such right arose or accrued prior to the Confirmation Date.

**1.15.** **"Claimant"** or **"Creditor"** shall mean the holder of a Claim against the Debtor.

**1.16.** **"Class"** shall mean a category of substantially similar Allowed Claims as designated in the Plan.

**1.17.** **"Committee"** shall mean the official committee of unsecured creditors, if any, appointed in the Chapter 11 Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as such Committee may be reconstituted from time to time.

**1.18.** **"Confirmation"** shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**1.19.** **"Confirmation Date"** shall mean the date upon which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.20.** **"Confirmation Order"** shall mean the Order of the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

**1.21.** **"Debtors"** shall mean Gary D. Roland and Renée A. Roland (collectively, the "Rolands").

**1.22. "Debtors in Possession"** shall mean the Rolands as debtors in possession pursuant to §1107 and §1108 of the Bankruptcy Code after the Petition Date.

**1.23. "Discharge Order"** shall mean that order entered by the Bankruptcy Court upon completion by the Debtors of payments to holders of Allowed Unsecured Claims in Class Nine pursuant to the Plan.

**1.24. "Disputed Claim"** shall mean that portion (including, where appropriate, the whole) of a Claim which is not, as of the Effective Date or thereafter, an Allowed Claim.

**1.25. "Effective Date"** shall mean the fifteenth (15th) day after the Confirmation Date, unless such day is not a Business Day, in which event, the Effective Date shall be the first day after the fifteenth (15th) day after the Confirmation Date which is a Business Day.

**1.26. "Final Order"** shall mean an Order or Judgment of the Bankruptcy Court as to which no review, rehearing, appeal, or certiorari proceeding is pending, and as to which the time in which to seek review or rehearing or to file notice of appeal or petition for certiorari has expired, or as to which any such right has been waived, and which has not been reversed, modified, amended, or stayed, and is thus conclusive as to all matters adjudicated thereby and is in full force and effect.

**1.27. "IRS"** shall mean the United States, Department of the Treasury, Internal Revenue Service.

**1.28. "Loan Documents"** shall mean all notes, loan agreements, leases, security agreements, and all other documents and papers executed by the Debtors in favor of a Creditor to evidence indebtedness of the Debtors to the Creditor, providing terms for the payment of the indebtedness and granting rights and assignments to the Creditor regarding the indebtedness and property of the Debtors.

**1.29. "Operating Claim"** shall mean a Claim under §503(b)(1) of the Bankruptcy Code which is entitled to priority under §507(a)(1) of the Bankruptcy Code for actual and necessary costs and expenses of preserving the estate and operating the business of the Debtors from and after the Petition Date to and including the Confirmation Date.

**1.30. "Net Cash Flow"** shall mean Debtors' Net Income less mortgage payments to Class Eight Creditor and Debtors' reasonable living expenses and reserve for income taxes.

**1.31. "Net Income"** shall mean Debtors' rental income less management fees, operating expenses, property taxes on rental property, insurance, association dues, mortgage payments to Creditors in Classes One, Two, Five and Six and distributions of net income and profits from the Debtors' interests in limited liability companies, less reserve for income taxes calculated in accordance with generally accepted accounting principles consistently applied.

**1.32. "Petition Date"** shall mean September 29, 2014, or the date the Chapter 11 Case was filed.

8

**1.33.** **"Plan"** shall mean this Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §1101, et. seq., as it may be amended or modified in accordance with the provisions hereof or in accordance with the Bankruptcy Code.

**1.34.** **"Post-Confirmation Expenses"** shall mean all reasonable fees and actual and necessary expenses incurred by the Debtors after the Effective Date for counsel and other professionals and experts retained by the Debtors or acting for the benefit of the Estate in carrying out and performing the Debtors' duties, responsibilities, rights and authority under the Plan or in consummation of the Plan, fees and charges under Section 1930 of title 28, United States Code, accrued prior to entry of an Order closing the Chapter 11 Case.

**1.35.** **"Priority Tax Claim"** shall mean that portion of an Allowed Claim that is entitled to priority under §507(a)(8) of the Bankruptcy Code.

**1.36.** **"Pro Rata"** shall mean proportionately so that the ratio of the amount of the distribution or payment made on account of an Allowed Claim to the amount of distribution or payment made on account of all Allowed Claims of the Class or category in which the particular Allowed Claim is included, is the same as the ratio of the amount of such Allowed Claim to the total amount of all Allowed Claims in such Class or category.

**1.37.** **"Schedules"** shall mean the schedules of assets and liabilities, statement of financial affairs, statement of executory contracts and unexpired leases, including as amended or supplemented, filed with the Bankruptcy Court by the Debtors pursuant to §521(a) of the Bankruptcy Code.

**1.38.** **"U.S. Bank"** shall mean U.S. Bank, N.A., as trustee on behalf of the holders of the J.P. Morgan Alternative Loan Trust 2007-S1 Mortgage Pass-Through Certificates.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Classes of Allowed Claims of Creditors against, the Debtor are designated as follows:

**2.1.** **Class One:** **Allowed Secured Claims of Chase Bank.** Class One consists of the Allowed Secured Claims of Chase Bank as to the respective parcels of real property located at 2537 Danielle Lane, 2539 Danielle Lane, 2540 Danielle Lane, 2544 Danielle Lane, 2550 Danielle Lane, 2857 Hanna Place, 2860 Hanna Place, 250 Simba Way, 2533 Mackenzie Lane, 2541 Mackenzie Lane, 2545 Mackenzie Lane, 2547 Mackenzie Lane, 2555 Mackenzie Lane, and 2567-2569 Mackenzie Lane, all in Lexington, Kentucky.

**2.2.** **Class Two:** **Allowed Secured Claims of Igloo Series III Trust.** Class Two consists of the Allowed Secured Claims of Igloo Series III Trust as to the respective parcels of real property located at 2542 Danielle Lane, 2546 Danielle Lane, 2845 Hanna Place, 2847 Hanna Place, 2949 Hanna Place, 2851 Hanna Place, 2853 Hanna Place, 243 Simba Way, 2535

9

Mackenzie Lane, 2537 Mackenzie Lane, 2543 Mackenzie Lane, and 2563-2565 Mackenzie Lane, all in Lexington, Kentucky.

**2.3.   Class Three:   Allowed Secured Claim of Kentucky Tax Lien Fund, LLC.** Class Three consists of the Allowed Secured Claim of Kentucky Tax Lien Fund, LLC for real property taxes due for the year 2008 on real property located at 2543 Mackenzie Lane, Lexington, Kentucky as set forth in Proof of Claim No. 23 as amended by Proof of Claim No. 69 in the amount of $6,173.56 plus accruing interest until paid in full.

**2.4.   Class Four:   Allowed Secured Claim of Lexington Fayette Urban County Government.** Class Four consists of the Allowed Secured Claim of the Lexington Fayette Urban County Government for real property taxes due for the year 2009 on real property located at 2543 Mackenzie Lane, Lexington, Kentucky as set forth in Proof of Claim No. 28 in the amount of $2,032.42 plus accruing interest until paid in full.

**2.5.   Class Five:   Allowed Secured Claim of MRGLO Investors Trust.** Class Five consists of the Allowed Secured Claim of MRGLO Investors, LP as to the parcel of real property located at 2553-2555 Danielle Lane, in Lexington, Kentucky.

**2.6.   Class Six:   Allowed Secured Claims of U.S. Bank.** Class Six consists of the Allowed Secured Claims of U.S. Bank as to the respective parcels of real property located at 2551 MacKenzie Lane, 2549 MacKenzie Lane, 1783 Raleigh Road, 108 Clover Valley Drive and 233 Chestnut Ridge, all in Lexington, Kentucky.

**2.7.   Class Seven:   Allowed Secured Claim of Deutsche Bank as to 1669 Konner Woods Drive.** Class Seven consists of the Allowed Secured Claim of Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-2, Mortgage-Backed Pass-Through Certificates Series 2007-2, secured by a mortgage of record at Mortgage Book 5951, Page 699 in the Fayette County Clerk's Office which has been assigned pursuant to an assignment of record at Miscellaneous Book 483, Page 480 against real property located at 1669 Konner Woods Drive, Lexington, Kentucky.

**2.8.   Class Eight: Allowed Secured Claim of Deutsche Bank as to 159 Chenault Road.** Class Eight consists of the Allowed Secured Claim of Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 as to the residence of the Debtors located at 159 Chenault Road, Lexington, Kentucky.

**2.9.   Class Nine:   Allowed Unsecured Claims.** Class Nine consists of all Allowed Unsecured Claims which are not an Administrative Claim, an Operating Claim, or a Priority Tax Claim.

**2.10.   Class Ten:   Interests of the Debtors in Property of the Estate.** Class Ten consists of all interest of the Debtors in property of the estate.

## ARTICLE 3

## TREATMENT OF CLASSIFIED CLAIMS

The Allowed Claims included in the Classes shall receive, in consideration thereof, the treatment specified as follows:

**3.1.    Class One (Chase Bank Claims).**  The Class One Claimant shall be deemed to have Allowed Secured Claims in the amounts shown on Exhibit A.  Unless otherwise agreed, each holder of a Class One Claim shall receive regular monthly payments of principal and interest as stated on Exhibit A.  Said payment amount has been determined by amortizing the value of the underlying real property stated on Exhibit A over a thirty year period beginning on the Effective Date with interest accruing at the rate of four and three-quarters percent per annum (4.75%).  Said payments shall be made on or before the 20th day of each month commencing on the 20th day of the first full month after the Effective Date, and Chase Bank shall retain each mortgage on the underlying real property up to the amount of the Allowed Secured Claim. Notwithstanding treatment of the claims of Chase Bank in one class, the individual claims shall stand alone, with no cross collateralization or cross-default between the claims.  Debtors will pay all real property taxes which initially become due after the Effective Date as to these properties and will continue to maintain each property insured for liability and for loss in at least the amount of the Secured Claim against each property with Chase Bank named as loss payee.  Upon completion of all such payments as to each property, the Class One Claimant shall release its mortgage lien against such property.

**3.2.    Class Two (Igloo Series III Trust).** The Class Two Claimant shall be deemed to have Allowed Secured Claims in the amounts shown on Exhibit A.  Unless otherwise agreed, each holder of a Class Two Claim shall receive regular monthly payments of principal and interest as stated on Exhibit A.  Said payment amount has been determined by amortizing the value of the underlying real property stated on Exhibit A over a thirty year period beginning on the Effective Date with interest accruing at the rate of four and three-quarters percent per annum (4.75%).  Said payments shall be made on or before the 20th day of each month commencing on the 20th day of the first full month after the Effective Date, and Igloo Series III Trust shall retain each mortgage on the underlying real property up to the amount of the Allowed Secured Claim. Notwithstanding treatment of the claims of Igloo Series III Trust in one class, the individual claims shall stand alone, with no cross collateralization or cross-default between the claims. Debtors will pay all real property taxes which initially become due after the Effective Date as to these properties and will continue to maintain each property insured for liability and for loss in at least the amount of the Secured Claim against each property with Igloo Series III Trust  named as loss payee.  Upon completion of all such payments as to each property, the Class Two Claimant shall release its mortgage lien against such property.

**3.3.    Class Three (Kentucky Tax Lien Fund, LLC).**  Within thirty (30) days of the Effective Date, the Allowed Secured Claim of the Class Three Claimant will be paid in full.

**3.4.    Class Four (Lexington Fayette Urban County Government).**   Within thirty (30) days of the Effective Date, the Allowed Secured Claim of the Class Four Claimant will be paid in full.

**3.5.   Class Five (MRGLO Investors, LP).**   The Class Five Claimant shall be deemed to have an Allowed Secured Claim in the amount shown on Exhibit A.   Unless otherwise agreed, the holder of the Class Five Claim shall receive regular monthly payments of principal and interest as stated on Exhibit A.   Said payment amount has been determined by amortizing the value of the underlying real property stated on Exhibit A over a thirty year period beginning on the Effective Date with interest accruing at the rate of four and three-quarters percent per annum (4.75%).   Said payments shall be made on or before the 20th day of each month commencing on the 20th day of the first full month after the Effective Date, and MRGLO Investors, LP shall retain the mortgage on the underlying real property up to the amount of the Allowed Secured Claim.   Debtors will pay all real property taxes which initially become due after the Effective Date as to these properties and will continue to maintain each property insured for liability and for loss in at least the amount of the Secured Claim against such property with Igloo Series III Trust named as loss payee.   Upon completion of all such payments as to such property, the Class Five Claimant shall release its mortgage lien against such property.

**3.6.   Class Six (U.S. Bank Claims).**   The Class Six Claimant shall be deemed to have Allowed Secured Claims in the amounts shown on Exhibit A and shall be deemed to have waive any Allowed Unsecured Claim.   Unless otherwise agreed, the holder of a Class Six Claim shall receive regular monthly payments of principal and interest as stated on Exhibit A.   Said payment amount has been determined by amortizing the value of the underlying real property stated on Exhibit A over a thirty year period beginning on the Effective Date with interest accruing at the rate of four and three-quarters percent per annum (4.75%).   Said payments shall be made on or before the 1st day of each month commencing on the 1st day of the first full month after the Effective Date, and U.S. Bank shall retain each mortgage on the identified collateral up to the amount of the Allowed Secured Claim.   Notwithstanding treatment of the claims of U.S. Bank in one class, the individual claims shall stand alone, with no cross collateralization or cross-default between the claims.   Debtors will pay all real property taxes which initially become due after the Petition Date as to these properties and will continue to maintain each property insured for liability and for loss in at least the amount of the Secured Claim against each property with U.S. Bank named as loss payee.   All payments to U.S. Bank shall be in full accord with the terms of those certain Stipulations For Plan Treatment On First Lien Secured By Real Property [Doc. No. 496. 497 and 498] as entered by the Bankruptcy Court, the terms of which are incorporated in full herein and copy of one such Stipulation [Doc. No. 496] is attached as Exhibit B.   As to any discrepancy between the terms of said Stipulations and this Plan, the terms of said Stipulations shall control, except only as to indebtedness secured by mortgages against 108 Clover Valley Drive and 233 Chestnut Ridge, which monthly payments shall commence on the 1st day of the 1st month after the Effective Date.   Upon completion of all such payments as to each property, the Class Six Claimant shall release its mortgage lien against such property.

**3.7.   Class Seven (Deutsche Bank Claim as to 1669 Konner Woods Drive).**   As of the Effective Date, the real property located at 1669 Konner Woods Drive will be deemed abandoned from the Estate in full satisfaction of the Claim of the Class Seven Creditor.   The Debtors will continue to rent, manage, and maintain the property until the property is conveyed by the master commissioner through foreclosure proceeding.   Until the completion of a foreclosure proceeding, the rental income shall be used to maintain, protect, and insure the real property.   Any remaining rental income shall be retained by the Debtors. The Class Seven Claimant shall not have an Allowed Unsecured Claim against the Debtors or the within estate.

**3.8.    Class Eight (Deutsche Bank Claim as to 159 Chenault Road).**  The Class Eight Claimant shall be deemed to have a *non-recourse* Allowed Secured Claim in the amount of $515,504.83 as of the Petition Date plus accruing interest and charges.  Debtors have applied or will apply for a loan modification under the Home Affordable Modification Program ("HAMP"). In the event the indebtedness is modified by the Class Eight Claimant on such terms as Debtors can perform, Debtors will pay the Class Eight Claimant in accordance with such modification. Debtors will continue to maintain such property insured for liability and for loss in at least the amount of the Secured Claim against the property with Deutsche Bank named as loss payee.  The Class Eight Claimant will retain its lien against the property and will be secured as herein provided, but the Debtors will have no personal liability to the Class Eight Claimant.  Upon completion of all payments provided for in any modification offered by the Class Eight Claimant and accepted by the Debtors, the Class Eight Claimant shall release its mortgage lien. In the event an indebtedness modification is not offered by the Class Eight Claimant and accepted by Debtors, or in the event the Debtors default in performance of any such modification, the Class Eight Claimant shall be entitled to enforce it rights under the note, mortgage and any modification documents.

**3.9.    Class Nine (Allowed Unsecured Claims).** The holders of Allowed Unsecured Claims in Class Nine shall receive distribution equal to their respective *pro-rata* share of Debtors' annual Net Cash Flow, after payments on Administrative Claims and Priority Tax Claims, over a five (5) year period commencing thirty (30) days from the Effective Date with such distributions being made annually over said five (5) years within thirty (30) days following the anniversary date of the Effective Date.

**3.10.    Class Ten (Interests of the Debtors in Property of the Estate).**  For and in consideration of the sum of Ten Thousand ($10,000) Dollars contributed to the estate by the sister of Gary Roland, the Debtors shall retain their interests in property of the estate.

## ARTICLE 4

### CLASSES OF CLAIMS THAT ARE IMPAIRED

**4.1.    Impaired Classes.**  Classes One, Two, Five, Six, Seven, Eight and Nine under the Plan are impaired.

**4.2.    Unimpaired Classes.**  Classes Three, Four and Ten are not impaired under the Plan, shall be deemed to have accepted the Plan, and will not be entitled to vote on the Plan.

**4.3.    Class Vote.**  Each impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.

## ARTICLE 5

### TREATMENT OF ADMINISTRATIVE CLAIMS, OPERATING CLAIMS AND PRIORITY TAX CLAIMS

**5.1.    Administrative Claims** shall be paid in full on the later of the Effective Date or as and when the respective Claims are allowed, approved and ordered paid by Final Order of the

13

Bankruptcy Court, or as soon thereafter as practicable, unless a Claimant agrees that payment of its Claim, or any portion thereof, may be deferred in which event such Claim shall be timely paid in accordance with such deferral agreement.

5.2    **Operating Claims** consisting of obligations incurred by the Debtors as Debtors-in-Possession in the course of business after the Petition Date and prior to the Confirmation Date, including obligations to taxing authorities incurred by the Debtors in Possession, shall be paid in accordance with the ordinary trade terms and conditions of any agreements relating thereto, unless a Claimant agrees that payment of its Claim, or any portion thereof, may be deferred in which event such Claim shall be timely paid in accordance with such deferral agreement.  If any tax liability of Debtors incurred after the Petition Date is due and has not been paid as of the Confirmation Date, same shall be paid in full on the Effective Date.

5.3    **Priority Tax Claims** shall be paid commencing on the last day of the calendar quarter ending after the Effective Date, in equal quarterly installments of principal and interest accruing from the Petition Date on the unpaid portion of such Claim, such that the holder of such Priority Tax Claim will receive on account of such Priority Tax Claim deferred cash payments over a period of five (5) years from the Petition Date, of a value, as of the Effective Date, equal to such Priority Tax Claim.  Each Priority Tax Claim shall bear interest equal to the rate determined under applicable nonbankruptcy law pursuant to Bankruptcy Code § 511(a) as of the Effective Date of the Plan, with such accrued interest payable in arrears.  A Claimant may agree that payment of its Priority Tax Claim, or any portion thereof, may be paid either a compromised settlement amount, or may be deferred in which event such Priority Tax Claim shall be timely paid in accordance with such agreement.  Additionally, the Debtors may elect to pre-pay such Priority Tax Claims partially or in full.  The Debtors may apply losses or refunds owed in subsequent tax years to further reduce the amounts owed for Priority Tax Claims.

## ARTICLE 6

## PROVISIONS REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1.    **Executory Contracts.**  All contracts that are executory, in whole or in part, which are not expressly rejected, nor subject to application of the Debtors for leave to reject filed with the Bankruptcy Court on or prior to the Confirmation Date, shall be deemed assumed.

6.2.    **Unexpired Leases.**  All leases of real property and of personal property by the Debtors which have not previously been rejected by the Debtors or expired by the terms thereof, nor subject to an application of the Debtors to reject filed with the Bankruptcy Court on or prior to the Confirmation Date, shall be deemed assumed.

## ARTICLE 7

## IMPLEMENTATION OF THE PLAN

7.1.    **Lien Avoidance.**  **As of the Effective Date, the following encumbrances shall be deemed avoided as to all parcels of real property identified in Article 2 that are retained**

14

**by the Debtors, shall thereafter be of no force or effect, and the holders of such claims shall release such encumbrances and be wholly unsecured:**

1.  Mortgage in favor of Community Trust Bank of record in Mortgage Book 4680, Page 64 in the Fayette County Clerk's Office that encumbers 2533 Mackenzie, 2437 Danielle Lane, 2553-2555 Danielle Lane, 2539 Mackenzie Lane, 2535 Mackenzie Lane, 2537 Mackenzie Lane, and 2539 Danielle Lane.

2.  Mortgage in favor of HSBC Bank, USA, N.A., as Trustee for SunTrust Acquisition Close-End Seconds Trust, Series 2007-1, of record in Mortgage Book 5952, Page 666 in the Fayette County Clerk's Office that encumbers 1783 Raleigh Road.

3.  Mortgage in favor of Mortgage Electronic Registrations, Inc., as nominee for Lender. American Home Mortgage, of record in Mortgage Book 5952, Page 712, as assigned to Bank of America by Assignment of record in Miscellaneous Book 499, Page 633, as further assigned to Mortgage Electronic Registration Systems, Inc. by Assignment of Mortgage of record in Miscellaneous Book 512, Page 699 in the Fayette County Clerk's Office that encumbers 108 Clover Valley Drive.

4.  Mortgage in favor of SRP 2013-9 Funding Trust, via assignment in Miscellaneous Book 512, Page 691 and via assignment in Miscellaneous Book 499, Page 160, of record in Mortgage Book 5953, Page 303 in the Fayette County Clerk's Office that encumbers 2551 Mackenzie Lane.

5.  Mortgage in favor of SRP 2013-9 Funding Trust, via assignment in Miscellaneous Book 512, Page 700, and via assignment in Miscellaneous Book 499, Page 157, of record in Mortgage Book 5953, Page 231 in the Fayette County Clerk's Office that encumbers 233 Chestnut Ridge Drive.

6.  Mortgage in favor of SRP 2013-9 Funding Trust, via assignment in Miscellaneous Book 512, Page 697, and via assignment in Miscellaneous Book 499, Page 631, of record in Mortgage Book 5952, Page 700 in the Fayette County Clerk's Office that encumbers 108 Clover Valley Drive.

7.  Mortgage in favor of Mortgage Electronic Registration Systems, Inc. of record Mortgage Book 5953, Page 269 in the Fayette County Clerk's Office that encumbers 2549 Mackenzie Lane.

8.  Mortgage in favor of Bank of the Bluegrass & Trust Co. of record Mortgage Book 5961, Page 392 in the Fayette County Clerk's Office that encumbers 159 Chenault Road.

9.  Mortgage in favor of Bank of the Bluegrass & Trust Co. of record Mortgage Book 4727, Page 699 in the Fayette County Clerk's Office that encumbers 2563-2565 Mackenzie Lane and 2567-2569 Mackenzie Lane.

10.     Mortgage in favor of Bank of the Bluegrass & Trust Co. of record Mortgage Book 4734, Page 706 in the Fayette County Clerk's Office that encumbers 2541 Mackenzie Lane, 2543 Mackenzie Lane, 2555 Mackenzie Lane, 2557 Mackenzie Lane, 2545 Mackenzie Lane, 2547 Mackenzie Lane, 2540 Danielle Lane, 2542 Danielle Lane, and 2544 Danielle Lane.

11.     Judgment Liens in favor of Kentucky Lighting & Supply, Inc. of record in Encumbrance Book 481, Page 70 and Encumbrance Book 481, Page 72 in the Fayette County Clerk's Office.

12.     Judgment Lien in favor of Chase Bank USA, N.A. of record in Encumbrance Book 499, Page 429 in the Fayette County Clerk's Office.

13.      Judgment Lien in favor of Discover Bank of record in Encumbrance Book 504, Page 721 in the Fayette County Clerk's Office.

14.     Judgment Lien in favor of the Board of Education of Fayette County of record in Encumbrance Book 502, Page 201 in the Fayette County Clerk's Office.

15.     Judgment Lien in favor of Lexington-Fayette Urban County Government of record in Encumbrance Book 550, Page 446 in the Fayette County Clerk's Office.

16.     Mechanic's Lien in favor of Johnathan Davis of record in Mechanic's Lien Book 25, Page 193 in the Fayette County Clerk's Office that encumbers 250 Simba Way.

**7.2.     Estate; Release of Liens.**  As of the Effective Date and except to the extent otherwise provided in the Plan, the Debtors shall be vested with all right, title, interest and ownership of all Assets, of whatever type, nature or kind, wherever located, of the Debtors in Possession, including all Causes of Action, free of all liens, Claims, encumbrances, and interests, which liens, Claims, encumbrances and interests shall be deemed fully released and discharged. As of the Effective Date, the Debtors shall be authorized to execute and file on behalf of Creditors any and all mortgage and/or lien releases and other release forms as may be necessary to vest the Assets in the Debtors free of such liens, Claims, encumbrances and interests released hereby.

**7.3.     Continued Operations of the Debtors.**  The Debtors shall have the duty and responsibility to continue managing rental properties owned by them and by third parties as deemed appropriate by the Debtors, in order to generate funds to make the payments required by the Plan and Post-Confirmation Expenses, as well as the regular and ordinary recurring operating expenses of the Debtors.  Notwithstanding any prior order(s) of the Bankruptcy Court, as of the Effective Date, the Debtors shall have the right to collect and use all rents and other cash collateral, as defined in the Bankruptcy Code, derived from the Debtors' operations.

**7.4.     Sale of Real Estate Assets.**  The Debtors shall have the right to sell any real property free and clear of all liens, claims, and encumbrances upon payment of the then outstanding balance of the Allowed Secured Claim secured by such real property.

16

**7.5.   Duties of Debtors.**   The Debtors shall have the duty and authority to:

(1)   pursue all Causes of Action and, upon notice as provided in this Article, settle and compromise any Cause of Action;

(2)   review, and where appropriate, object to Claims;

(3)   maintain the Debtors' books and records in accordance with generally accepted accounting principles;

(4)   abandon Assets, on Notice as provided in this Article, when determined in the best interest of the Debtors and their Creditors;

(5)   employ, retain and, on notice as provided in this Article, compensate professionals presently employed by the Debtors pursuant to Orders of the Bankruptcy Court, and, upon notice as provided in this Article, replace such professionals or employ other professionals, including, without limitation, attorneys, accountants, auctioneers, and investment advisors;

(6)   employ or contract with and compensate necessary personnel;

(7)   distribute all payments in accordance with the Plan;

(8)   timely file all tax returns; and

(9)   take all such actions as may be necessary or appropriate in consummation of the Plan.

**7.6.   Notice Procedure.**   When any provision of this Plan requires that notice be given, notice shall be filed with the Bankruptcy Court, and shall be served upon:

(1)   any Creditor who, according to the Debtors' Schedules, by proof of Claim filed in this case, or by Order of the Bankruptcy Court, claims or holds a lien, security interest, mortgage or other encumbrance against or interest in property which the Debtors proposes to sell or abandon;

(2)   any Creditor or party in interest who has filed in this Chapter 11 Case and served upon the following, a written request for post-confirmation notices; and the following:

**To the Debtors:**

Gary D. Roland
Renée A. Roland
159 Chenault Road
Lexington, KY 40502

And

17

Taft A. McKinstry, Esq.
Kentucky Bar ID: 46610
300 West Vine Street, Suite 600
Lexington, KY  40507-1660
Telephone: 859-252-6700
Facsimile: 859-255-3735
E-mail:  TMcKinstry@Fowlerlaw.com

ATTORNEYS FOR GARY D. ROLAND AND
RENÉE A. ROLAND

**To the Office of the United States Trustee:**

Office of the United States Trustee
100 East Vine Street, Suite 500
Lexington, Kentucky 40507
Telephone:    859-233-2822
Facsimile:    859-233-2834

All notices shall be served by any written or electronic means, including but not limited to, facsimile, email, first class mail, express mail, overnight courier delivery, and hand delivery. Any notice so served shall be deemed to have been given when sent.

**7.7.    Request for Post-Confirmation Notices.**  Any Creditor or party in interest who desires notice as required in this Plan shall file with the Bankruptcy Court and serve upon the parties set forth in subsection (2) of Article 7.6, a written request for Post-Confirmation Notices.

**7.8.    Objection to Notice.**  Any Creditor or party in interest who objects to an action to be taken, a statement for compensation of any professional, or other action or relief proposed in any notice given as provided in this Plan, shall file with the Bankruptcy Court and serve upon all parties set forth in Article 7.6, within the time set forth in the notice, a written objection setting forth the basis of such objection and notice of the time and place of hearing before the Bankruptcy Court on such objection.

**7.9.    Approval of Noticed Matter.**  Any matter as to which notice is given as provided in this Plan and as to which no objection is timely made as provided in this Article shall be deemed approved and authorized, without the entry of an Order by the Bankruptcy Court thereon.

**7.10.  Execution of Documents and Taking of Actions by Debtors.**  Debtors are authorized to execute and deliver contracts and all such other documents and to perform all such other actions necessary or appropriate to operate the Debtors' business, or otherwise to effectuate the provisions of the Plan.

**7.11.  Prosecution of Claims and Causes of Actions.**  The rights, duties, and obligations of the Debtors to investigate, prosecute, and collect all of the Debtors' causes of action shall pass to and vest in the Debtors as of the Effective Date.  Specifically, claims to be

18

considered by the Debtors include, but are not limited to, preferential and fraudulent conveyance claims under state and federal law against all entities and persons. If a motion or suit has not been filed to collect, prosecute or liquidate any action within one hundred and eighty (180) days from the Effective Date, it shall be deemed abandoned. Any recovery from said litigation shall be deposited in the Debtors' account subject to any professional fees and expenses associated with said litigation. Notwithstanding any provision relating to their Claims under the Plan, any Creditor who received a payment from the Debtors during the two (2) years before the Petition Date is subject to suit to recover said transfer.

**7.12. Exemption from Transfer Taxes.** Pursuant to § 1146(c) of the Bankruptcy Code, the execution, delivery or recording of any instrument of transfer, including deeds, assignments and bills of sale, under, in furtherance of, or in connection with the Plan, shall not be taxed under any law imposing a stamp tax or similar tax, including transfer tax pertaining to real or personal property.

**7.13. Authority for Transactions.** Upon the Effective Date, all actions contemplated or required in order to carry out the provisions of, and consummate, the Plan shall be fully authorized and approved in all respects, without further action.

**7.14. Confirmation Order as Evidence.** Following the Effective Date, a true and correct copy of the Confirmation Order and the Plan shall be legally sufficient evidence of the terms, provision and effect of this Plan for all purposes in any subsequent judicial proceeding or official record. Without limiting the foregoing, true and correct copies of the Confirmation Order and the Plan shall be sufficient evidence of, and may be filed to evidence, the release, satisfaction or termination of any encumbrance or Claim held by or asserted by a Creditor against the Debtors or any property of the Debtors.

**7.15. Setoff.** The Debtors may setoff against any Claim and the distributions to be made pursuant to this Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or any such right of setoff against such Claimant.

**7.16. Objections to Claims.** The Debtors may file an objection to any Claim whether before or following Confirmation of the Plan. A Claim as to which no objection is pending as of the Confirmation shall be entitled to vote on the Plan as an Allowed Claim, without affecting the right of the Debtors to thereafter file an objection to the allowance of such Claim, or a determination by the Bankruptcy Court of the disallowance of such Claim, for purposes of distribution under the Plan.

**7.17. Distributions with Respect to Disputed Claims.** Until a Disputed Claim becomes an Allowed Claim by Final Order (whether or not such Claim is deemed an Allowed Claim for purposes of voting on the Plan), no distribution shall be made by the Debtors on account of such Claim. For purposes of determining the amount of distributions by the Debtors pursuant to the Plan to the holders of Allowed Claims, the appropriate Pro Rata calculations required by the Plan shall be made as if all such Disputed Claims were, as of the Effective Date, Allowed Claims in the full amount claimed by the respective holders thereof. The distributions

so calculated on account of such Disputed Claims shall be held by the Debtors and thereafter distributed to the respective holders of such Disputed Claims to the extent each such Disputed Claim becomes an Allowed Claim. If a Claim is partially a Disputed Claim, the portion thereof that is not a Disputed Claim shall be included in distribution to the holders of Allowed Claims of the same Class or category as that portion of the Claim would otherwise be entitled under the Plan.

**7.18.  Unclaimed Distributions.**  All distributions under the Plan shall be made at the addresses set forth on the proofs of claim filed in the Chapter 11 Case, or the last known address of the holder of an Allowed Claim, if no proof of claim has been filed by the holder of such Claim, or if such Claimant has notified the Debtors of a change of address. In the event any distribution under the Plan by the Debtors in respect of an Allowed Claim remains unclaimed by reason of return, failure of Claimant to negotiate same or otherwise, for ninety (90) days following the date of issuance of the distribution under the Plan, after reasonable efforts by the Debtors to deliver such distribution to the holder of such Allowed Claim, such distribution to the holder of such Allowed Claim shall be void and be deemed waived and canceled, and such distribution shall be retained by, and become the property of, the Debtors. In such event, the Allowed Claim upon which such unclaimed distribution was made shall be deemed waived and shall be discharged and released in full for all purposes, and such distribution shall be deemed abandoned by the holder of the Allowed Claim on which such distribution was made, and no further distributions shall be made on such Claim.

**7.19. De Minimus Payments.**  Distributions of less than $25.00 to the holders of Allowed Claims need not be made by the Debtors and may be accumulated and made when the amount of the distribution on such Allowed Claim totals $25.00 or more. All accrued distributions, regardless of amount, shall be made at the time of final payment on all other Allowed Claims in the same category or Class as such accumulated distributions.

**7.20. Consummation; Closing of Case.**  Consummation of the Plan shall occur on the date following the Confirmation Date when all disputed Claims, contested matters and adversary proceedings have been determined by Final Order. The Debtors reserve the right to thereafter move the Bankruptcy Court to close the Chapter 11 Case, and shall have the right to reopen the Chapter 11 Bankruptcy Case for entry of the Discharge Order upon completion of payments to holders of Allowed Unsecured Claims in Class Nine pursuant to the Plan.

## ARTICLE 8

## ADDITIONAL PROVISIONS

**8.1.  Time Periods.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**8.2.  Governing Law.**  Except to the extent the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Kentucky.

**8.3.  Severability.**  The invalidity or unenforceability, whether in general or in any particular circumstance, of any provision of this Plan shall not affect or impair the validity or

enforceability of such provision in any other circumstance, or any other provision hereof. The Plan shall be so interpreted to give effect and validity to all the provisions hereof to the fullest extent permitted by law.

## ARTICLE 9

### EFFECT, REVOCATION, MODIFICATION AND CONFIRMATION OF THE PLAN

**9.1.  Effect.**  Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking of any action, election or vote by any Creditor with respect to the Plan shall be deemed an admission against interest by any party, and, until the Effective Date, be or be deemed binding on the Debtors or any Creditor, or a waiver or release of any rights which any Creditor may have against the Debtors or their property.

**9.2.  Revocation.**  The Debtors reserve the right to revoke and withdraw the Plan at any time prior to Confirmation.

**9.3.  Modification Prior to Confirmation.**  The Debtors may modify the Plan at any time prior to Confirmation pursuant to the provisions of §1127 of the Bankruptcy Code, provided that such Plan, as modified, meets the requirements of §1122 and §1123 of the Bankruptcy Code.

**9.4.  Modification After Confirmation.**  The Debtors may modify the Plan at any time after Confirmation provided that such Plan, as modified, meets the requirements of §1122 and §1123 of the Bankruptcy Code, the circumstances warrant such modification, and the Bankruptcy Court, after notice and hearing, confirms the Plan, as modified, under §1129 of the Bankruptcy Code.

**9.5.  Acceptance or Rejection of Modification.**  A Creditor that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Court, such Creditor changes its previous acceptance or rejection; the Plan may be modified including to correct any defect, cure any omission or reconcile any inconsistency in the Plan, without notice to or further vote of Creditors provided that such modification does not materially or adversely affect the interest of such Creditor.

**9.6.  Deletion of Classes.**  Any Class that does not contain an Allowed Claim or Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation hearing shall be deemed deleted from the Plan for purposes of determining acceptance or rejection of the Plan by such Class under Bankruptcy Code § 1129(a)(8).

**9.7.  Confirmation Under §1129(b) of the Bankruptcy Code.**  The Debtors, pursuant to §1129(b) of the Bankruptcy Code, request the Court to confirm the Plan if all of the applicable requirements of §1129(a) of the Bankruptcy Code have been met other than those of §1129(a)(8).

## ARTICLE 10

## DISCHARGE AND DEFAULT

**10.1. Discharge.** As provided in § 1141(d)(5)(B) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Confirmation Order or the Discharge Order, the Discharge Order shall be a judicial determination of discharge of the Debtors from all Claims that arose before the Confirmation Date, and any liability on any debt that is specified in §502 of the Bankruptcy Code, as if such Claim arose before the Confirmation Date, whether or not (i) a proof of Claim based on any such debt or liability is filed or deemed filed under §501 of the Bankruptcy Code; (ii) a Claim based on such debt or liability is allowed under §502 of the Bankruptcy Code; or (iii) the Claimant has accepted the Plan.

**10.2. Injunction.** All Creditors are permanently enjoined from asserting against the Debtors or their property, any Claim, debt, right, liability or cause of action based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order.

**10.3. General Release by Holders of Claims.  As of the Effective Date, in consideration for the obligations of the Debtors under the Plan, each holder of a Claim will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtors' obligations under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to, or in connection with, the Debtors, Claims against the Debtors, the Chapter 11 Case, the Plan or confirmation of the Plan (collectively, the "Released Claims") that such Claimant has, had or may have, as of the Petition Date, during the Chapter 11 Case or as of the Effective Date (which release will be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code) against any of the following acting solely in the following capacities: (i) the Debtors, their employees, attorneys, accountants, financial advisors, managers and agents.**

**10.4. Injunction Related to Released Claims.** Each holder of a Claim is permanently enjoined from the commencement or prosecution, whether directly, derivatively or otherwise, of any Claim against any entity or individual released pursuant to the Plan, the Confirmation Order or the Bankruptcy Code.

**10.5. Notice of Default.** In the event of any alleged default under the Plan, any Creditor or party in interest must give a written default notice to the Debtors with copies to counsel of record for the Debtors specifying the nature of the alleged default. Upon receipt of the default notice, the Debtors shall have thirty (30) days to cure or contest such default from the date of the receipt of the notice. If such default has not been cured or contested within the applicable time period, the default may be brought to the attention of the Bankruptcy Court. The injunction provided for herein shall expire as to the Creditor or party in interest claiming a default if any

22

property noticed default notice remains uncured or uncontested after the expiration of the thirty (30) day cure period, but it shall remain in place otherwise.

**10.6. IRS Default Provisions.** If the Debtors fail to make deposits of any currently accruing income, employment, or other tax liability, fail to make payment of any tax to the IRS within ten (10) days of the due date of such deposit or payment, fail to make the payments to the IRS as provided by the Plan, or fail to file any required federal tax return by the due date of such return, as may be extended, then the IRS may, following written notification of default to the Debtors providing a reasonable opportunity to cure the default, declare that the Debtors are in default under the Plan. Failure to pursue remedies for default as detailed herein does not constitute a waiver by the IRS of the right to pursue any such default remedies. Following written notification of default to the Debtors by the IRS as set forth above, and the Debtors' failure to cure such default within thirty (30) days, the entire assessed and accrued liability to the IRS shall become due and payable immediately and the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.

**10.7. Set-Off and Recoupment Rights.** Except as specifically provided in the Plan, no Person shall retain any contractual or statutory right to set off or recoup any Asset in satisfaction of that claimant's prepetition Claim. Any right to set off or recoup a Claim against an Asset that is not specifically retained in the Plan in waived and forever barred.

**10.8. No Admissions or Waivers.** Neither the filing of the Plan or the Disclosure Statement (as either may be modified or amended) nor the taking of any action by the Debtors with respect to the Plan or Disclosure Statement is, or shall be deemed, an admission or waiver of any of the Debtors' rights or defenses. In the event Confirmation does not occur or the Plan does not become effective, no statement contained herein or in the Disclosure Statement may be used or relied on in any manner as against the Debtors in any suit, action, proceeding, or controversy within or outside of the Bankruptcy Case. The Debtors further reserve all of their rights against all Persons in the event the Plan is not confirmed or does not become effective.

## ARTICLE 11

## RETENTION OF JURISDICTION

**11.1. Purposes.** The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following Confirmation until entry of the Discharge Order, including, but not limited, for the following purposes:

(1)     To determine all matters relating to the classification or allowance of Claims, including the re-examination of any Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims. Failure of the Debtors to object to, or to examine, any Claim for the purposes of voting shall not be deemed a waiver of the right of the Debtors to object to, or examine, or re-examine, any Claim in whole or in part either prior to or following Confirmation.

(2)     To determine all Claims, and the amount thereof, arising from the rejection of executory contracts and unexpired leases and to hear and determine all matters

23

relating to the rejection, assumption and/or assignment of executory contracts and unexpired leases.

(3)    To liquidate or estimate for purposes of distribution all disputed, contingent or unliquidated Claims.

(4)    To determine all applications for compensation and reimbursement of expenses of professionals, and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

(5)    To determine all matters and proceedings regarding property of the Debtors, including the recovery of property, the avoidance of transfers of interests in property, the determination of the validity, extent, or priority of or avoidance of liens against property, the valuation of interests in property, or the extent of any amount subject to setoff under the provisions of the Bankruptcy Code, or other applicable non-bankruptcy law, whether or not such matter or proceeding was pending as of the Confirmation Date, and the issuance of any injunction necessary to protect the property and title thereto.

(6)    To determine under §505 of the Bankruptcy Code, or otherwise, any tax liability of the Debtors or the estate of the Debtors.

(7)    To determine the tax effects of the Plan, pursuant to §1146 and other applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law.

(8)    To determine all matters and proceedings arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case whether or not such matter or proceeding was pending as of the Confirmation Date.

(9)    To enter such order(s) as may be appropriate if the Confirmation Order is stayed, reversed or vacated.

(10)    To enter order(s) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, any document created in connection with the Plan, or any order of the Bankruptcy Court, including the Confirmation Order.

(11)    To enter order(s) regarding modification of the Plan after entry of the Confirmation Order pursuant to provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

(12)    To determine all controversies relating to the interpretation, enforcement, performance, or consummation of the terms of the Plan, or any document created in connection with the Plan, and to enter such order(s) as are necessary or appropriate to carry out the provisions of the Plan.

(13)    To enter order(s) of implementation of the Plan to the extent authorized by §1142 of the Bankruptcy Code.

(14)   To determine all other matters as may arise in connection with the Plan, any document created in connection with the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, and to determine such other matters as may be provided in the Confirmation Order.

(15)   To determine all matters and proceedings arising under, or not inconsistent with, Chapter 11 of Bankruptcy Code, 11 U.S.C. §1101, *et seq.*

(16)   To determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code or the Bankruptcy Rules, including to enter such orders as may be necessary or appropriate in aid of Confirmation or to facilitate implementation and consummation of the Plan.

(17)   To enter a final decree.

(18)   To close the Chapter 11 Case.

**11.2. Exclusive Jurisdiction.**  The Bankruptcy Court shall have exclusive jurisdiction over all matters and proceedings arising in or related to the Chapter 11 Case, including the matters set forth above, and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

**11.3. Abstention.**   If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter or proceeding arising in or related to the Chapter 11 Case, including the matters set forth in this Article 11, then this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**GARY D. ROLAND**

BY: */s/ Gary D. Roland*
Gary D. Roland

**RENÉE A. ROLAND**

BY: */s/ Renée A. Roland*
Renée A. Roland

4832-1549-4223, v. 1

# Exhibit A

Secured Claims
Exhibit A to Plan and Exhibit 4 to Disclosure Statement

| Class | Property Address | POC No. | POC Amount | Property Value | Allowed Sec. Claim | 30 yr. AM at 4.75% | Unsec. Claim |
|---|---|---|---|---|---|---|---|
| | **JP Morgan Chase Bank, N.A.** | | | | | | |
| 1 | 2537 Danielle Lane | Amended 49 | $108,516.38 | $60,000.00 | $60,000.00 | $312.99 | $48,516 |
| 1 | 2539 Danielle Lane | Amended 37 | $110,368.55 | $73,000.00 | $73,000.00 | $369.88 | $37,368 |
| 1 | 2540 Danielle Lane | 33 | $79,726.63 | $60,000.00 | $60,000.00 | $312.99 | $19,728 |
| 1 | 2544 Danielle Lane | Amended 50 | $84,281.11 | $60,000.00 | $60,000.00 | $312.99 | $24,28 |
| 1 | 2550 Danielle Lane | 46 | $86,556.42 | $60,000.00 | $60,000.00 | $312.99 | $26,556 |
| 1 | 2857 Hanna Place | 36 | $104,975.60 | $70,000.00 | $70,000.00 | $365.15 | $34,975 |
| 1 | 2860 Hanna Place | Amended 48 | $107,885.23 | $70,000.00 | $70,000.00 | $365.15 | $37,88 |
| 1 | 250 Simba Way | 65 | $97,768.57 | $60,000.00 | $60,000.00 | $312.99 | $37,76 |
| 1 | 2533 MacKenzie Lane | 64 | $87,831.70 | $65,000.00 | $65,000.00 | $329.35 | $22,83 |
| 1 | 2541 MacKenzie Lane | 63 | $88,504.61 | $60,000.00 | $60,000.00 | $312.99 | $28,50 |
| 1 | 2545 MacKenzie Lane | 29 | $86,264.58 | $65,000.00 | $65,000.00 | $329.35 | $21,26 |
| 1 | 2547 MacKenzie Lane | 66 | $83,116.87 | $65,000.00 | $65,000.00 | $329.35 | $18,116 |
| 1 | 2555 MacKenzie Lane | Amended 51 | $86,851.11 | $65,000.00 | $65,000.00 | $329.35 | $21,85 |
| 1 | 2567-2569 McKenzie Lane | 42 | $211,074.53 | $149,800.00 | $149,800.00 | $759.01 | $61,27 |
| | | | $1,423,721.89 | $982,800.00 | $982,800.00 | $5,054.53 | $440,92 |
| | **NRZ Pass-Through Trust V.** | | | | | | |
| 2 | 2542 Danielle Lane | 67 | $84,678.55 | $60,000.00 | $60,000.00 | $312.99 | $24,678 |
| 2 | 2546 Danielle Lane | Amended 47 | $87,059.40 | $60,000.00 | $60,000.00 | $312.99 | $27,059 |
| 2 | 2845 Hanna Place | Amended 34 | $107,350.06 | $70,000.00 | $70,000.00 | $365.15 | $37,350 |
| 2 | 2847 Hanna Place | Amended 58 | $105,634.46 | $70,000.00 | $70,000.00 | $365.15 | $35,634 |
| 2 | 2849 Hanna Place | Amended 44 | $111,667.77 | $70,000.00 | $70,000.00 | $365.15 | $41,667 |
| 2 | 2851 Hanna Place | Amended 53 | $107,287.19 | $70,000.00 | $70,000.00 | $365.15 | $37,28 |
| 2 | 2853 Hanna Place | 62 | $106,543.28 | $70,000.00 | $70,000.00 | $365.15 | $36,54 |
| 2 | 243 Simba Way | Amended 59 | $95,828.96 | $60,000.00 | $60,000.00 | $312.99 | $35,82 |
| 2 | 2535 MacKenzie Lane | 57 | $90,687.05 | $65,000.00 | $65,000.00 | $329.35 | $25,687 |
| 2 | 2537 MacKenzie Lane | 61 | $86,387.55 | $65,000.00 | $65,000.00 | $329.35 | $21,38 |
| 2 | 2543 MacKenzie Lane | 60 | $85,746.00 | $65,000.00 | $65,000.00 | $329.35 | $20,74 |
| 2 | 2563-2565 Mackenzie Lane | 56 | $215,720.20 | $149,800.00 | $149,800.00 | $759.01 | $65,920 |
| | | | $1,284,590.47 | $874,800.00 | $874,800.00 | $4,511.78 | $409,790 |
| | **MTGLO Investors, LP** | | | | | | |
| 5 | 2553-2555 Danielle | Amended 45 | $188,532.25 | $170,000.00 | $170,000.00 | $861.37 | $18,532.2 |
| | | | $188,532.25 | $170,000.00 | $170,000.00 | $861.37 | $18,532.2 |

Secured Claims

Exhibit A to Plan and Exhibit 4 to Disclosure Statement

| | | | | | | |
|---|---|---|---|---|---|---|
| **U.S. BANK, N.A., as Trustee of J.P. Morgan Alternative Loan Trust 2007 –S1 Mortgage Pass-Through Certificates** | | | | | | |
| 6 | 2551 MacKenzie Lane | 41 | $108,144.03 | $65,950.00 | $65,950.00 | $344.03 | $42,19... |
| 6 | 2549 MacKenzie Lane | 25 | $103,602.85 | $65,950.00 | $65,950.00 | $344.03 | $37,65... |
| 6 | 1783 Raleigh Road | 35 | $98,451.05 | $83,950.00 | $83,950.00 | $437.92 | $14,50... |
| 6 | 108 Clover Valley Drive | 55 | $155,259.81 | $110,000.00 | $110,000.00 | $573.81 | $45,259... |
| 6 | 233 Chestnut Ridge | 54 | $136,506.37 | $110,000.00 | $110,000.00 | $573.81 | $45,25... |
| | | | $601,964.11 | $435,850.00 | $435,850.00 | $2,273.60 | $184,86... |
| | **Deutsche Bank** | | | | | | |
| 8 | 159 Chenault | N/A | N/A | $515,504.83 | $515,504.83 | To be Determined | To be Determined |
| | | | N/A | $515,504.83 | $515,504.83 | To be Determined | To be Determined |

Case 14-52221-tnw Doc 622-2 Filed 09/11/17 Entered 09/11/17 10:28:29 Desc
Document Page 31 of 36

# Exhibit B

1  Attorneys for Secured Creditor, U.S. Bank N.A., as trustee, on behalf of the holders of of the J.P.
2  Morgan Alternative Loan Trust 2007-S1 Mortgage Pass-Through Certificates, its assignees
   and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc.
3

4

5                    UNITED STATES BANKRUPTCY COURT

6                    EASTERN DISTRICT OF KENTUCKY

7                         LEXINGTON DIVISION

8
   In re:                          ) Case No.  14-52221
9                                  )
   Gary Roland,                    )
10                                 )
                                   ) Chapter 11
11        Debtor.                  )
                                   )
12                                 )  AGREED ORDEROF ADEQUATE
                                   ) PROTECTION REGARDING US BANKS'
13                                 ) MOTION FOR RELIEF FROM STAY
                                   ) [DOCKET # 431] AND TO SETTLE
14                                 ) OBJECTION TO CONFIRMATION OF
                                   ) PLAN [DOCKET # 370]
15                                 )
16                                 )
                                   )
17                                 )
                                   )
18                                 ) Judge:
19                                 )
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23  ────────────────────────────────)

24

25

26

27

28

29

                                    1

U.S. Bank N.A., as trustee, on behalf of the holders of of the J.P. Morgan Alternative Loan Trust 2007-S1 Mortgage Pass-Through Certificates, its assignees and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc. ("Secured Creditor" herein) and Debtor, Gary Roland ("Debtor" herein), by and through their attorneys of record, now enter into the below stipulation to resolve that Motion for Relief From Stay as to Real Estate Located at 2551 Mackenzie Lane, Lexington, KY 40509 (First Mortgage) [Doc. No. 431] and agree to plan treatment of the indebtedness secured by First Mortgage against said Real Estate to settle U.S. Bank's Objection to Confirmation of Plan [Doc. No. 370].

## RECITALS

A. On 1/4/2007, Debtor, for valuable consideration, made, executed and delivered a Note secured by a First Deed of Trust both in the amount of $70,499.00 on the property commonly known as 2551 Mackenzie Ln, Lexington, KY 40509 ("Subject Property").

B. On or about 9/29/2014, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of Kentucky ("Bankruptcy").

C. As of the date of filing of said bankruptcy case, the total amount of Secured Creditor's claim with regard to the Subject Property was approximately $108,144.03.

D. The parties have conferred and agreed upon the treatment of Secured Creditor's first lien secured by the Subject Property for purposes of Debtor's Chapter 11 Plan and those terms are reflected below.

## THE PARTIES HERETO STIPULATE AND AGREE AS FOLLOWS:

1. The value of the Subject Property is $65,950.00 for the purposes of this instant Chapter 11 case.

2. Secured Creditor will have a secured claim in the amount of $65,950.00 and an unsecured claim of approximately $42,194.03, and the unsecured claim will be reduced to $0 upon confirmation of the plan.

2

3. Debtor(s) agree(s) to pay the secured claim amount of $65,950.00 at a 4.75% fixed interest rate with payments calculated at a 360  month amortization schedule, with all amounts due upon the maturity date 12/1/2045.

4. All amounts still outstanding upon the maturity date under this agreement, including any deferred non-interest bearing amount, will be due and owing in full on the maturity date 12/1/2045.

5. The principal and interest payment ("P&I" herein) under these agreed terms is approximately $344.03 per month. This amount is approximate, and the formal re-amortization under this agreement will be completed by Secured Creditor after successful confirmation of the Plan of Reorganization that incorporates same.

6. The loan will remain impounded for taxes and insurance on the Subject Property in accordance with the terms of the deed of trust and note.  The current amounts due are taxes at $57.66 per month and insurance at $54.92 per month.  Debtor Is aware these amounts may fluctuate.

7. The first payment of under this agreement is due 1/1/2016 in the amount of $456.61 per month (principal and interest $344.03 + taxes $57.66 + insurance $54.92). Debtor(s) have not made any payments since filing the Bankruptcy and agree(s) to make payments in this amount until the permanent loan adjustments are made and post confirmation mortgage statement is sent out reflecting the new loan terms and monthly payment amount. Debtor(s) agree(s) to pay the amounts reflected in those statements.

8. Payments shall be made directly to Secured Creditor at Attn: Remittance Processing P.O. Box 65450 Salt Lake City, UT 84165-0450, with reference to the last four digits of the Loan Number 7005, or as otherwise directed.

9. All post petition escrow advances will remain due and owing on the loan and will be repaid through an escrow shortage payment post confirmation OR included in the total principal balance due upon maturity.  The payment required under this stipulation prior to confirmation does not include an escrow shortage payment.  The escrow shortage will be calculated and added to the monthly payment after the permanent loan adjustments are

3

made and post confirmation mortgage statement is sent out reflecting the new loan terms and monthly payment amount.

10. All other terms of the Deed of Trust and Note not directly altered by this agreement will remain in full force and effect.

11. Secured Creditor has relief from the automatic stay as to the Subject Property upon confirmation of Debtor's Chapter 11 Plan.

12. In the event of a default on payments to Secured Creditor under the terms of this stipulation prior to the entry of the confirmation order, Secured Creditor shall notify Debtor and Debtor's counsel of the default in writing. Debtor(s) shall have ten (10) calendar days from the date of the written notification to cure the default, and Debtor(s) agree(s) to pay an additional $100.00 for attorney fees for each default occurrence. If Debtor(s) fail(s) to cure the default, Secured Creditor may lodge a declaration of default and order terminating the automatic stay and include that the 14-day stay as provided in FRBP 4001(a)(3) is waived. Upon entry of the order the automatic stay shall be terminated and extinguished for purposes of allowing Secured Creditor to notice, proceed with, and hold a trustee's sale of the Subject Property, pursuant to applicable state law and without further Court Order or proceeding being necessary, including any action necessary to obtain complete possession of the Subject Property, including unlawful detainer.

13. In the event of a default on payments to Secured Creditor under the terms of this stipulation after the entry of the confirmation order, Secured Creditor shall may proceed pursuant to the terms of the underlying deed of trust and note, and state and federal law, to obtain complete possession of the Subject Property, including unlawful detainer, without further court order or proceeding being necessary. Any and all default provisions included in Debtor's Chapter 11 plan are not applicable to Secured Creditor with regard to the Subject Property, and Secured Creditor is only bound by the terms included in this stipulation.

4

14. Debtor(s) agree(s) to incorporate the above agreed terms of lien treatment into any and all existing and future proposed Chapter 11 Plans through either exact language or by attaching this stipulation as an exhibit to the plan, and if any terms in Debtor's(s') Chapter 11 Plan conflict with the terms of this stipulation the terms of this stipulation will control. In the event that Debtor's(s') Chapter 11 Plan does not reflect the language of this stipulation, Debtor(s) agree(s) that the stipulation terms will be incorporated into the confirmation order through exact language, attachment of the stipulation as an exhibit to the confirmation order, or by reference in the confirmation order of the stipulation by document number.

15. Secured Creditor agrees to vote for Debtor's(s') Chapter 11 Plan provided it Debtor has complied with all provisions of this stipulation.

16. If this instant Chapter 11 bankruptcy petition is dismissed and/or converted to another chapter under title 11, Secured Creditor's lien shall remain a valid secured lien for the full amount due under the original Promissory Note and all payments received under this agreement will be applied contractually under the original terms of the Deed of Trust and original Promissory Note.

IT IS SO STIPULATED:

Dated: 8/15/2016                      /s/ Taft A. McKinstry
                                      Taft A. McKinstry
                                      Attorney for Debtor,
                                      Gary Roland


Dated: 8/15/2016                      /s/ Amy E. Gardner
                                      Amy E. Gardner, Attorney for U.S. Bank
                                      N.A., as trustee, on behalf of the holders of
                                      of the J.P. Morgan Alternative Loan Trust
                                      2007-S1 Mortgage Pass-Through
                                      Certificates, its assignees and/or successors,
                                      by and through its servicing agent Select
                                      Portfolio Servicing, Inc.

5

Stipulation for Plan Treatment, Case No. 14-52221
File No. KY-15-120541

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
*Tracey N. Wise*
Bankruptcy Judge
Dated: Wednesday, March 29, 2017
(tnw)